NOT FOR PUBLICATION

**FILED**

JAMES J. WALDRON, CLERK

[February 23, 2012]

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Elizabeth Grassia, Deputy

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ———————————————— | : | |
| IN RE: | : | CHAPTER 7 |
|  | : | |
| CHARLES W. JULIANO, JR., | : | CASE NO.  09-10884 (GMB) |
|  | : | |
| Debtor. | : | |
| ———————————————— | : | |
|  | : | |
| SEMANOFF, ORMSBY, GREENBERG & | : | ADVERSARY NO. 10-2297 (GMB) |
| TORCHIA, LLC, as Third Party | : | |
| Beneficiary of Claim of James R. Cuozzo, | : | |
|  | : | |
| Plaintiff, | : | |
| v. | : | |
|  | : | |
| CHARLES W. JULIANO, JR. and | : | MEMORANDUM OPINION |
| STEVEN R. NEUNER, Chapter 7 Trustee, | : | |
|  | : | |
| Defendants. | : | |
| ———————————————— | : | |

APPEARANCES:    Michael B. Dubin, Esquire
                SEMANOFF, ORMSBY, GREENBERG &
                TORCHIA, LLC
                2617 Hunterdon Pike
                Hunterdon Valley, PA  19006

                Charles W. Juliano, Jr.
                230 Chelton Parkway
                Cherry Hill, NJ  08034

                Steven R. Neuner, Esquire
                NEUNER AND VENTURA, LLP
                Willow Ridge Executive Office Park
                750 Route 73 South, Suite 210
                Marlton, NJ  08053

Before the Court is an adversary proceeding filed by Semanoff Ormsby Greenberg &
Torchia, LLC, ("SOGT") as Third Party Beneficiaries of the claims of James R. Cuozzo
("Cuozzo" and collectively with SOGT, the "Plaintiffs") against Charles W. Juliano, Jr.,
("Debtor") pursuant to 11 U.S.C. §§727 and 523 (the "Complaint").  Specifically, the Plaintiffs
allege that the Debtor should not receive a discharge of certain debts pursuant to §523(a)(2)(A),
and also objects to the Debtor's discharge pursuant to §727(a)(3).

## I.      JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§1334(a) and 157(a), and the Standing
Order of the United States District Court for the District of New Jersey dated July 23, 1984.  This
is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(I) and (J).  The District of New Jersey is
a proper venue pursuant to 28 U.S.C. §§1408 and 1409.

## II.     PROCEDURAL HISTORY

On January 15, 2009, the Debtor filed the within petition for relief under chapter 7 of
Title 11 of the United States Code and on September 29, 2010, SOGT filed this adversary case.
On December 20, 2010 an order was entered permitting Cuozzo to intervene in the within
adversary case.  Debtor filed a Motion to Dismiss the Complaint on December 3, 2010, and said
motion was ultimately dismissed for Debtor's failure to appear at a hearing thereon.   On October
15, 2010, the Court held a trial regarding the Plaintiff's Complaint.

## III.    FACTS

The Debtor was the owner/operator of several entities which, inter alia, sold eye glasses
and/or sunglasses (the "Eye Store Entities").  In or around 2002, the Debtor and Cuozzo began
negotiating the terms of a sale agreement whereby the Debtor would sell to Cuozzo the Eye Store
Entities for approximately $450,000.00.  The Debtor alleges that Cuozzo failed to tender a
sufficient down payment and as a result, the deal was called off by Debtor.  However, Cuozzo
alleges that Debtor's failure to provide tax returns and other financial documents to Cuozzo in
anticipation of the sale caused the deal to ultimately fall apart.  Regardless of the precipitating
reasons, it is acknowledged by both parties that the sale did not occur as anticipated in 2002 and
the Eye Store Entities were not sold to Cuozzo.  It is significant to note that Cuozzo paid a

$20,000.00 deposit to the Debtor prior to the anticipated sale, however, Cuozzo admits that the Debtor returned the full amount of the deposit to him after the deal was called off by Debtor. Thus, Cuozzo admittedly did not pay anything towards the purchase price of the Eye Store Entities.

After the deal fell through in 2002, SOGT, on behalf of Cuozzo, filed a complaint against the Debtor and the Eye Store Entities in the Court of Common Pleas, Montgomery County, Pennsylvania Case No. 02-23556 (the "State Court Action").  In the State Court Action Cuozzo alleged, *inter alia*, that the Debtor engaged in fraudulent conduct in relation to a potential sale of the Eye Store Entities to Cuozzo and that as a result of said fraud Cuozzo sustained damages. Specifically, the complaint in the State Court Action alleged (i) breach of contract; (ii) intentional misrepresentation; and alternatively (iii) negligent misrepresentation.  Each count of Cuozzo's State Court Action complaint demanded judgment against Debtor and the Eye Store Entities, jointly and severally, in "an amount exceeding $50,000, plus costs of suit and such other relief…"  See Plaintiff's Exhibit A at pgs. 6,7, & 8. In the State Court Action complaint Cuozzo also stated that it suffered "lost opportunity and income of approximately $179,000 per year in owning and operating [Eye Store Entities]".  Id. at pg. 6 ¶ 29.  Cuozzo eventually obtained a Judgment by Default in the State Court Action against the Debtor and the Eye Store Entities in the amount of $1,798,350.00[1] on June 10, 2005.

The Debtor alleges that after the deal with Cuozzo fell through, Ms. Levey, an unrelated third party, offered to purchase the businesses for $300,000.00 in cash in late 2002.  Debtor further alleges that shortly after the Debtor sold the Eye Store Entities to Ms. Levey, she then turned around and sold the business to another unrelated third party for an unknown sum.  As part of the sale of the Eye Store Entities to both Ms. Levey and the subsequent purchaser, Debtor alleges that it was agreed by the parties that he would continue to work under a management contract with the stores in 2003 and 2004.  As part of this management contract, which the Debtor was unable to produce, the Debtor testified that he was permitted to treat the businesses

---

[1] It is unclear from the record how this number was arrived at in the State Court Action.  The Plaintiffs indicated at the trial on the matter that no proof hearing was conducted in the State Court Action.  It seems that the almost $1.8 million dollar judgment against the Debtor was based primarily upon Cuozzo's representations to the court about the somewhat speculative "lost opportunity" costs of conducting the Eye Store Entities' business for ten (10) years going forward.  As noted in Cuozzo's State Court Complaint, Debtor allegedly represented to Cuozzo as part of the sales negotiations that the net profit for 2001 for the Eye Store Entities was $179,686.00.

as if he owned them.  Debtor testified that his only obligation to the owner of the businesses under the terms of the management contract was to pay them ten percent (10%) of overall profit generated.   To that end, Debtor testified that he would take business deductions on his tax returns as if he owned the business and pay himself out of the businesses accounts as if it were his own.

The Debtor testified that after the closing of the first sale to Ms. Levey, he took the $300,000 she paid in cash and put it into a drawer in his bedroom at his Mother's home in Cherry Hill, New Jersey.  Debtor alleges that from this drawer of cash, he paid for an expensive brain surgery for himself (approximately $100,000) and his living expenses, which included continuing medical care, utility payments, prescription drug payments, and costs incident to living.  The Debtor has no receipts, medical records, or other documentation showing how or where the $300,000 was allegedly spent.

The Debtor testified that he has no books or records from the Eye Store Entities and that he kept hand written "daily summary sheets" for the businesses when he was working.  See Pl. Compl. at Exhibit "A" pg. 34.   However, Debtor was unable to produce any such written "daily summary sheets".  Debtor testified that there were no documents or other written instruments executed in connection with the sale of the Eye Store Entities to Ms. Levey and that the "management contract" under which he worked in 2003 and 2004 could not be produced.

Debtor alleged that his brain surgery was necessitated by a "brain disorder" which caused seizures and pain, however, Debtor was unable to produce any medical records, receipts, or other documents substantiating Debtor's claim.  Debtor testified that some of the medications that he was forced to take due to his brain disorder affected his memory and that perhaps, said medications could have been the reason for his inconsistent testimony in prior depositions.

Debtor alleged that after his brain surgery in 2002, and after he stopped working under the management contract in 2003 and 2004, he had no other sources of income aside from the remainder of the $300,000 lump sum of cash that was stored in his dresser drawer.  However, Debtor's tax returns for 2003 through 2005 show that Debtor still owned and operated the optical businesses after the 2002 sale, or that Debtor at least filed his tax returns as the purported owner of the Eye Store Entities.  Indeed, the tax returns for those years include depreciation on

equipment and include cost of goods sold in excess of $800,000.00.  Again, Debtor testified that his "management contract" permitted him to continue treating the company as if it was his own. With respect to the 2005 tax return, when asked about it at his 341 hearing, the Debtor responded "I don't  -- I don't know about this 2005.  I don't know what you're talking about."  See Plaintiff's Comp. Exhibit A. at pg. 44 ¶15-16.  Debtor testified that he and his accountant prepared projections for the Eye Store Entities in 2005 for a tax return, but that the tax return was never filed and was only prepared for the purpose of attempting to secure a business loan for the purchase of a new business.

While Plaintiffs in this case have gone to great lengths to point out the holes and inconsistencies in Debtor's account of his past business dealings, it is the total absence of any meaningful records and/or information from the Debtor that is remarkable.  Indeed, even after reviewing all of the evidence and testimony proffered in this case, it is still unclear what was or was not sold in 2002, to whom the stores were sold or not, and whether or to what extent the Debtor played any role in the stores after his alleged brain surgery.

While the Debtor's failure to maintain adequate books and records may ultimately serve as a basis for a denial of his discharge under §727, as more fully set forth below, the Plaintiffs have failed to meet their burden of proof with respect to the §523(a)(2)(A) nondischargeability claim.

## IV.    DISCUSSION

### A.    Plaintiffs' Claim Under §523(a)(2)(A)

In order to prevail on a complaint brought under §523(a)(2)(A), a creditor bears the burden of proving the following elements by a preponderance of the evidence: (1) the debtor made a material misrepresentation of fact that he or she knew at the time was false or contrary to his or her true intentions; (2) the debtor made the representation with the intention and purpose of deceiving the creditor; (3) the creditor justifiably relied on the representation; and (4) the creditor suffered a loss or damages as a proximate cause of the false representation or act. See e.g., In re Giquinto, 388 B.R. 152, 165 (Bankr.E.D.Pa. 2008).  To be actionable for purposes of §523(a)(2)(A), the "debtor's conduct must involve moral turpitude or intentional wrong; mere

negligence, poor business judgment or fraud implied in law …is insufficient." <u>In re Singh</u>, 433

B.R. 139 (Bankr.E.D.Pa. 2010).

In connection with their §523(a)(2)(A) claim, the Plaintiffs allege in their Complaint that

the "debt is a judgment for money based upon false pretenses, false representations and actual

fraud in negotiating a potential sale as set forth in the Action." See Plaintiff's Compl. at pg. 3

¶10.    The Plaintiffs seem to rely upon the allegations made in the State Court Action complaint

to substantiate their §523(a)(2)(A) claim, however, a closer look at the underlying State Court

Action complaint reveals that it too is devoid of specific factual allegations which are required to

sufficiently state a claim for fraud under §523.  Indeed, the State Court Action complaint alleges

that

> ¶7.    … Juliano represented the Stores had combined gross sales for 2001 of
> $734,660.00, gross profit of $529,359.00 and net profit of $179,686.
>
> ¶8.    Plaintiff relief upon the sales and profit figures provided by Defendants
> and further pursued the purchase of the Stores.
> …
>
> ¶13.    …[t]he Amendment [to the Offer to Purchase], among other things, made
> the Offer to Purchase contingent on Plaintiff reviewing and approving the finances
> of the Stores.
> …
>
> ¶21.    Despite [Juliano's] agreement [to obtain his copies of his individual 1999,
> 2000, and 2001 tax returns], Juliano never obtained the tax returns from the IRS
> and never provided them to Plaintiff, CIT or the SBA.
> …
>
> ¶24.    Plaintiff contacted Juliano in or around the end of June 2002 (after June
> 29, 2002) to inquire about the status of the tax returns.  During this conversation
> Juliano stated that the closing was supposed to occur on June 29, 2002 and since it
> was past that date, the deal was off.
> …
>
> ¶27.    Upon information and belief, Defendants failed to provide tax returns
> because they falsified the tax returns, and/or sales revenue, specifically the amount
> of revenue from the Stores.
>
> ¶28.    At all times, Plaintiff acted in good faith in attempting to complete the
> acquisition of the Assets of the Stores, however, Defendants' bad faith refusal to
> cooperate with Plaintiff and CIT and provide the tax returns prevented Plaintiff
> from closing on the purchase of the Assets of the Stores.

See Plaintiff's Exhibit 1. pgs. 3-5. The allegations made in the State Court Action complaint, upon which the default judgment is based, cannot serve as a basis for denial of discharge pursuant to §523(a)(2)(A).   For example, the Plaintiffs fail to allege what statement or representation was made by Debtor that was a *material misrepresentation*.   Further, even if a material misrepresentation was alleged by the Plaintiffs, they have failed to adduce any evidence that they relied upon such representation to their detriment or that such reliance was reasonable under the circumstances

One of the only representations that the Plaintiffs allege Debtor made during the initial negotiations was with respect to the sales and profit figures, however, Cuozzo cannot be said to have justifiably relied upon this statement to his detriment because he was demanding IRS tax returns to substantiate said representation.  Indeed, the Debtor's failure to produce such documentation supporting the sales figures is what led to the ultimate demise of the deal according to Plaintiffs.  The only other "fraudulent" representation alleged by the Plaintiffs in the State Court Action complaint relates to the allegation that the Debtors falsified tax returns and/or sales revenues.  However, the Plaintiffs admittedly never saw these allegedly fraudulent tax returns and therefore could not have relied upon them.

While it may be unfortunate that the sale of the Eye Store Entities to Cuozzo never took place, this Court is unable to find any factual support for the allegation by Plaintiffs that Debtor made fraudulent misrepresentations, engaged in fraud, or obtained money based upon false pretenses.  Aside from the transaction costs which Cuozzo may have incurred in attempting to consummate the deal, like legal fees, loan application fees, etc., the Plaintiffs have been unable to point to any damages caused by the failure to consummate the sale.  While it is true that Plaintiff obtained a judgment for almost $1.8 million dollars, said judgment was not the subject of a proof hearing and according to Plaintiff's own testimony, the damage amount was a number suggested by Plaintiff and initially arrived at by taking Debtor's estimated yearly profits and multiplying them by ten (10) years.

It should be noted that the default judgment in State Court is not entitled to preclusive effect in the within matter. Claim preclusion, or *res judicata*, from pre-bankruptcy state court litigation does not apply to dischargeability disputes under section 523(a). See In re Graham, 973

7

F.2d 1089, 1095-96 (3d Cir. 1992). Moreover, in order for issue preclusion, or *collateral estoppel*, to arise, the following elements must be proven:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

Id., at 1097 (citing In re Braen, 900 F.2d 621, 628-29 n. 5 (3d Cir. 1990)). Pennsylvania state court default judgments do not give rise to section 523 issue preclusion since issues are not actually litigated. See, *e.g.*, Matter of McMillan, 579 F.2d 289 (3d Cir. 1978); see also In re Graves, 33 F.3d 242, 248 (3d Cir. 1994) ("[D]efault judgments are not given preclusive effect in Pennsylvania's courts.")

In this instance, the Plaintiffs have failed to allege sufficient facts upon which this Court could find that the debt is non-dischargeable.  As noted above, the parties were engaged in sale negotiations for the Eye Store Entities and the sale did not take place.  Even assuming that everything the Plaintiffs said is true, *i.e*, that the Debtor failed to produce his tax returns to because they were fraudulent, such claim cannot be the basis of a nondischargeability count because the Plaintiffs admittedly did not rely on such representations.  Not only have the Plaintiffs failed to sufficiently allege and/or prove that the Debtor made a misrepresentation upon which they relied, this Court finds it troubling that the Plaintiffs are alleging almost $1.8 million dollars in damages when the Plaintiffs paid $0.00 towards the purchase price of the Eye Store Entities.  While it is true that Plaintiffs may have expended a certain amount of money in their attempts to consummate the deal (*i.e*., attorneys fees, UCC and title searches, etc.), it seems somewhat speculative, to say the least, to award Plaintiffs projected lost profit damages for a ten year span without any supporting evidence.

Having failed to satisfy their burden of proof with respect to the §523(a)(2)(A) claim, the Plaintiff's nondischargeability claim under §523(a)(2)(A) must be denied.

## B.    Plaintiffs' Claim Under §727(a)(3)

A debtor may be denied a discharge if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be

ascertained, unless such act or failure to act was justified under all of the circumstances of the case.  11 U.S.C. §727(a)(3).  Despite the general rule regarding the objecting party's burden to prove an exception to discharge, see Fed. R. Bankr. P. 4005, the complainant's burden under §727(a)(3) is only to identify the missing records, books, documents, papers, or other information from which the debtor's financial condition or business transactions might be ascertained.  Meridian Bank v. Alten (In re Alten), 958 F.2d 1226 (3d Cir. 1992) (explaining the burden shifting procedure under 727(a)(3) by reference to the procedure under 727(a)(5)).  Here, the Plaintiffs have successfully shifted the burden to the Debtor, who has failed to satisfy his resulting burden.

Under §727(a)(3), "a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."  In re Alten, 958 F.2d at 1232.  In clarifying the dual part test, the court in Buzzelli held that adequate records are those that allow for an "intelligent inquiry," excluding records that are either (a) chaotic or incomplete, (b) speculative, or (c) in such a condition that a creditor must organize and reconstruct the debtor's business affairs.  In re Buzzelli, 246 B.R. 75, 96-97 (Bankr.W.D.Pa. 2000).

Once a creditor meets its burden under §727(a)(3), a debtor may only prevail if his failure to maintain and preserve adequate records was "justified under all of the circumstances of the case."  11 U.S.C. §727(a)(3).  Justification is a fact specific question of reasonableness.  In re Alten, 958 F.2d at 1230-31.  The "justification inquiry" has two components.  Id.  First, "what a normal, reasonable person would do under similar circumstances given the education, experience, and sophistication of the debtor; the volume of the debtor's business, the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice."  See DeAngelis v. Young (In re Young), 2010 Bankr.LEXIS 4228 (Nov. 15, 2010) (citing In re Alten, 958 F.2d at 1230-31).  "[T]he second component is the fullness, in the absence of records, of disclosure – the adequacy of which is a condition precedent to discharge."  Id. at *21.  As noted by the court in Alten, "[w]hile the debtor may justify his failure to keep records in some cases, a discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs."  In

re Alten, 958 F.2d at 1230-31.  "The test is whether there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past, may be ascertained."  Id. (internal quotations omitted).

Here, the Plaintiffs have made an initial showing by pointing to numerous inadequacies in Debtor's records.  The Debtor has failed to produce even one document from the Eye Store Entities.  The Debtor has failed to produce any documents or other records regarding any of his transactions involving the sale of the Eye Store Entities.  Debtor has also failed to maintain adequate records of his disposition of the proceeds of the sale transaction, if any, including, but not limited to, medical bills, living expenses, the basis of his 2005 tax returns etc.  The Debtor admits to having received $300,000.00 in cash for the sale of the Eye Store Entities, yet contends that he has not one receipt or other document showing where or how this money was spent.  The Debtor alleges that he worked under a "management contract" during 2004 and 2005, yet he has not been able to produce any such document.  Finally, it should be noted that in the documents that have been provided, not necessarily by the Debtor, discrepancies abound.

Debtor does not dispute the absence of records, but instead argues that he has provided the Plaintiff and the Trustee with all that he has and that such production should be sufficient to defeat the §727(a)(3) claim. Debtor relies heavily upon the alleged fact that he suffered from a brain disorder, underwent brain surgery, and was forced to take several powerful medications as a result thereof.  Even if this Court were inclined to accept the proposition that a serious medical condition could serve as justification for failure to maintain adequate records in this case, the Debtor has provided the Court with nothing to substantiate his claim to have suffered such mental deficiencies.  The Debtor testified that he was able to continue managing a business, file tax returns, and support himself financially; yet, during this same time period he claims that he was unable to keep any documentation or records due to his illness.

This Court finds Debtor's failures to be unjustifiable and unreasonable under the circumstances.  Debtor is a sophisticated individual who has stated he is a college graduate and the former owner operator of several successful businesses.  The Plaintiffs have identified failures in record-keeping and said failure has precluded any accurate analysis into Debtor's

financial condition or affairs.[2]  No satisfactory justification has been offered by Debtor for said failures.

**V.      CONCLUSION**

While the Court must deny the Plaintiff's claim for nondischargeability under §523(a)(2)(A) because the required elements for nondischargeability have not been established, this Court will deny the Debtor his discharge under §727(a)(3) because Debtor unjustifiably failed to keep or preserve recorded information from which his financial condition could be ascertained.  Counsel for the Plaintiff shall submit an Order in conformance with this Memorandum Opinion.

BY THE COURT:

Honorable Gloria M. Burns
United States Bankruptcy Judge

Dated:   February 23, 2012

---

[2] It should be noted that the Plaintiff's Complaint also included counts under §§727(a)(4) and (a)(5).  Section 727(a)(4)(A) states that a court will grant a discharge unless: "(4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."  11 U.S.C. §727(a)(4)(A).  Section §727(a)(5) requires the court to grant the debtor a discharge unless: "(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  As noted above, the Debtor's failure to keep adequate records have made it impossible to ascertain the Debtor's financial condition or to meaningfully analyze the Debtor's financial affairs.  Certainly, this Court finds it difficult to believe that the Debtor spent $300,000.00 in cash without being able to produce any receipts or documentation as to the disposition of such funds; and this Court also finds it difficult to believe that the management contract under which Debtor supposedly worked allowed him to treat the business as his own for all intents and purposes.  However, because this Court finds that Debtor's discharge should be denied under §727(a)(3) and because such utter failure in record keeping has made it impossible for this Court to adequately ascertain the Debtor's financial condition, this Court need not determine §§727(a)(4) and/or (a)(5) provide an additional basis for denial of Debtor's discharge.